IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SHAWN L. DUNN #01686724 | § | |
| v. | § | CIVIL ACTION NO. 6:22cv215 |
| BRYAN COLLIER, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Shawn Dunn, a prisoner currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named defendants are TDCJ Executive Director Bryan Collier, TDCJ-CID Director Bobby Lumpkin, Assistant Warden Johnathan Clark of the Beto Unit, Access to Courts Clerk Ashley Burns, also located at the Beto Unit, and "Texas Correctional Management Health Care Committee and UTMB employees of Beto Unit in its entirety." He also appears to name a security officer named Talia Pryor.

**I. The Plaintiff's Complaint**

Plaintiff states that he had a prior lawsuit in which claims concerning Covid-19 were declared to be in a separate action (i.e. not part of the prior lawsuit because they did not appear in the operative pleading, Plaintiff's amended complaint). He asserts that Ashley Burns "repetitively interfered with the progress of the litigation on the Covid matter by intentionally falsifying scheduled sessions, declining to make up session times when security issues intervene." He complains that Burns constantly interferes with access to court legal sessions by scheduling session

times when the building schedule is different, thus affecting research, deadlines, and causing constant extension requests. According to Plaintiff, these actions "clearly disturbed the process of the prior claims as related cases."

He says that the medical staff refused to honor medical requests but falsified records as if they had honored these requests. No appointments are made and inmates are not allowed to see medical or dental providers or to have examinations, thus failing to protect inmates from Covid-19. Plaintiff states that the medical staff "partaking in refusing to honor medical requests, falsifying as if they did, clearly exposes the truth of facts that are being described in this claim." He avers that the UTMB employees' portion of the lawsuit "really bears on treatment, any ongoing existence of medical issues, they are also liable for treatment of chronic illness, etc., that may have long-term effects." Plaintiff also claims that "the overseeing official of medical at the Beto Unit virtually have no knowledge of UTMB officials' defiance."

Plaintiff asserts that Warden Johnathan Clark oversees the grievance investigation process at the Beto Unit. However, he states that "the statements provided to the assistant warden are unsolidified [sic] and uninvestigated by this warden, so he's signing grievance responses without making sure the investigations are properly performed." He contends that Warden Clark aided a grievance investigator in fabricating statements, thus harming "plaintiff's ability to fight claim with adequate procedures."

Plaintiff states that Officer Pryor intentionally disregarded Correctional Managed Health Care Policy 14.52 when she refused to allow Plaintiff to perform "necessary sanitation that is CDC protocol in the department in which Plaintiff worked." He says this led to "positive readings for Covid-19 from offenders and employees in the education department which jeopardized the health and safety of the employment area, because Plaintiff utilized the grievance process, retaliation of false disciplinary reports were written that affected Plaintiff's profile and security position on the unit. Finally, Plaintiff's statement of claim concerning TDCJ Executive Director Bryan Collier and

Correctional Institutions Division Director Bobby Lumpkin simply says "see attached from related case with a continuance to disregard protocol, and commit Eighth Amendment violation."

For relief in his lawsuit, Plaintiff states as follows: "The Court's obligation to rectify this matter in its allowed jurisdiction, utilize their authority, to hold accountability for the violation of state and federal, initiate an injunction to prevent this from going further."

As attachments to his complaint, Plaintiff first includes a newspaper article about an investigation into false disciplinary cases being written at Texas prison units. He also attaches an article about prison guards being fired after planting screwdrivers in inmates' cells.

Next, Plaintiff furnishes Step One grievance no. 2022072976, signed on March 9, 2022, complaining that Officer Pryor continues to search legal property without using Correctional Managed Health Care 14.52, concerning the use of personal protection, mainly gloves. He complains that she constantly interacts with inmates coming in the front door of the school and reads the contents of documents without changing gloves. The response to this grievance, signed by Warden Clark, says that security staff mentioned in the grievance denied the allegations and said that gloves are changed and hand sanitizer is used between each inmate during searches. Without evidence or witnesses to corroborate the claims, no further action is warranted.

In the Step Two appeal of this grievance, Plaintiff complained that the claims in the grievance response are false because the cameras will show whether the officer is changing gloves and using sanitizer. He contends that Warden Clark is supporting these statements, giving the impression as though the official statements are true without even checking with the grievance investigator, which makes the warden a party to the false statement made on the state documents. He says that the officer continues to go in envelopes of legal material and pulling out the folders without using sanitizer. The school principal is a witness to this. The response to this grievance says that only one issue per grievance will be addressed and Plaintiff was appropriately advised at the Step One level. No evidence was found to support the allegations of misconduct against Pryor,

and staff conduct will continue to be monitored to ensure policy compliance. Based on the information available, no further action is warranted.

In grievance no. 2020133101, signed on June 5, 2020, Plaintiff complained of being housed on a wing with inmates who tested positive for Covid-19 despite the fact that he himself tested negative. The response to the grievance stated that his allegations have been investigated, he is appropriately housed under the Correctional Managed Health Care Infection Control Manual, and TDCJ is taking the situation seriously and is committed to the operation of a safe, secure, and sanitary facility.

In grievance no. 202100475, signed March 3, 2020, Plaintiff complained that officers named Childress and Young implemented an unsafe precaution measure by implementing a lockdown, including the refusal of showers. He says that lockdown restrictions should be suspended due to Covid-19, because suspending these restrictions allows inmates to move, to get hot meals, to have access to phones as well as religious services, work, and the medical department. The response to the grievance says that TDCJ policies and procedures allow for incident-related lockdowns in order to restore security and order and protect the safety of staff and offenders, and there were no policy or procedure violations with D-Wing being placed on a 23-hour lockdown.

In his Step Two appeal of this grievance, Plaintiff stating that he wrote the Step One grievance particularly about showers, after there was a directive saying that disinfectant needed constant spraying on surfaces and washing and showering were necessary. He argued that the suspension should be documented, and if not, it "coincides with falsifying documents." Plaintiff also says that when security and order are compromised, this is usually done by an individual offender, not the whole wing. He says that the officers violated policy, but the grievance investigator chose to disregard it. The response to this grievance says that Plaintiff was properly advised at Step One, the agency is responsible for the safety and security of all staff and offenders, and a lockdown was implemented to preserve the unit's secure environment.

Plaintiff has also filed a motion asking the Court to "initiate a protective order concerning files of proof of denial of access to courts, confirmation of lay-ins being rescheduled, denying of session times due to the overlapping of their time to stay at work, utilizing the count schedule to reschedule [law library] sessions, refusing to provide active cases for research." After filing this motion, Plaintiff furnished a change of address indicating that he had been transferred to the Byrd Unit; thus, any requests for injunctive relief he may have had regarding the law library at the Beto Unit are moot. Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

## II. Discussion

Court records show that the Plaintiff Shawn Dunn has filed at least three previous lawsuits or appeals which were dismissed as frivolous or for failure to state a claim upon which relief may be granted.  *See* Dunn v. Farrell, et al., civil action no. 6:16cv72 (W.D.Tex., dismissed as frivolous June 20, 2016); Dunn v. Abbott, et al., civil action no. 6:21cv265 (E.D.Tex., dismissed as frivolous and as barred by Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994));[1] Dunn v. Catoe, et al., 716 F.App'x 369, 2018 U.S. App. LEXIS 7810, 2018 WL 1560052 (5th Cir., March 28, 2018) (appeal dismissed as frivolous).

28 U.S.C. §1915(g), added by Act of Congress on April 26, 1996 as part of the Prison Litigation Reform Act, provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Because Plaintiff has three strikes and thus falls under the Act, he cannot proceed under the *in forma pauperis* statute unless he shows that he was in imminent danger of serious physical injury as of the date of the filing of the lawsuit. *See* Baños v. O'Guin, 144 F.3d 883, 885 (5th Cir.1998).

---

[1] The Fifth Circuit has made clear that a dismissal pursuant to Heck counts as a strike. Hamilton v. Lyons, 74 F.3d 99, 102 (5th Cir. 1996); German v. Baker, 124 F.App'x 257, 2005 U.S. App. LEXIS 3171, 2005 WL 419500 (5th Cir., February 23, 2005).

This imminent danger must relate to the allegations of the complaint. Judd v. Federal Elections Commission, 311 F.App'x 730, 2009 U.S. App. LEXIS 3464, 2009 WL 423966 (5th Cir., February 20, 2009).

In order to meet the imminent danger requirement of §1915(g), the threat must be "real and proximate." Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003). Allegations of past harm do not suffice; the harm must be imminent or occurring at the time that the complaint or notice of appeal is filed, and the exception refers to "a genuine emergency" where "time is pressing." Heimerman v. Litscher, 337 F.3d 781, 782 (7th Cir. 2003). In passing the statute, Congress intended a safety valve to prevent impending harms, not those which had already occurred. Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3rd Cir. 2001). In that case, the Third Circuit rejected a claim that allegations of having been sprayed with pepper spray, combined with a claim that prison officials engaged in "continuing harassment, plots to hurt or kill him, and other forms of retaliation," sufficiently alleged imminent danger.

This Court and others have held that the prisoner must allege specific facts showing he is under imminent danger of serious physical injury at the time of the filing of the lawsuit; general allegations not grounded in specific facts indicating serious physical injury is imminent are not sufficient to invoke the exception to §1915(g). Fuller v. Wilcox, 288 F.App'x 509, 2008 U.S. App. LEXIS 16581, 2008 WL 2961388 (10th Cir., August 4, 2008), *citing* Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003); Hyder v. Obama, civil action no. 5:11cv26, 2011 U.S. Dist. LEXIS 31300, 2011 WL 1113496 (E.D.Tex., March 11, 2011, *Report adopted at* 2011 U.S. Dist. LEXIS 31288, 2011 WL 1100126 (E.D.Tex., March 24, 2011); Valdez v. Bush, civil action no. 3:08cv1481, 2008 U.S. Dist. LEXIS 118452, 2008 WL 4710808 (S.D.Tex., October 24, 2008); Ruston v. Dallas County, civil action no. 3:04cv1691, 2004 U.S. Dist. LEXIS 26391, 2004 WL 2512232 (N.D.Tex., Nov. 5, 2004).

In this regard, the Fifth Circuit has stated that speculative and conclusory allegations that a prisoner was placed in imminent danger through failure to follow Covid-19 protocols are not

sufficient to avoid the three strikes bar. Ortiz v. Collier, 855 F.App'x 966, 2021 U.S. App. LEXIS 24042 (5th Cir., August 12, 2021) (allegations that prison employees entered prisoner's cell without proper personal protective equipment and that prison officials mishandled or manipulated the grievance process were insufficient to show imminent danger); Price v. Sanders, slip op. no. 20-30450, 2022 U.S. App. LEXIS 13305, 2022 WL 1553530 (5th Cir., May 17, 2022) (risk of exposure to Covid-19 was not itself sufficient to show imminent danger). Likewise, the district courts within the Fifth Circuit have held that general fears of Covid-19 while imprisoned do not satisfy the "imminent danger" exception to the "three strikes" bar. Crayton v. Polk, civil action no. 5:20cv86, 2021 U.S. Dist. LEXIS 232207, 2021 WL 5759048 (E.D.Tex., December 3, 2021); Dotson v. Abbott, civil action no. 6:20cv400, 2020 U.S. Dist. LEXIS 247143, 2020 WL 8096329 (E.D. Tex., November 2, 2020), Report adopted at 2021 U.S. Dist. LEXIS 5380, 2021 WL 111499 (E.D. Tex., January 12, 2021); Brooks v. Harris County Jail, 2020 U.S. Dist. LEXIS 187251, 2020 WL 5982265 (S.D. Tex., October 7, 2020).

Plaintiff wholly fails to offer specific facts showing that he was in imminent danger of serious physical injury arising from the allegations of his complaint as of June 1, 2022, the date he signed his complaint. His grievances date from 2020 and 2021, and the allegations of the complaint are vague and general, not grounded in specific facts showing imminent danger arising from the allegations forming the basis of the lawsuit. Consequently, Plaintiff is barred from proceeding *in forma pauperis*; however, he should be allowed a reasonable period of time in which to pay the filing fee and proceed with his lawsuit should he choose to do so. Plaintiff should note that payment of the filing fee would not affect a screening analysis for frivolousness or failure to state a claim under 28 U.S.C. §1915A.

RECOMMENDATION

It is accordingly recommended that the Plaintiff's application for leave to proceed *in forma pauperis* be denied and the above-styled civil rights lawsuit be dismissed with prejudice as to the refiling of another *in forma pauperis* lawsuit raising the same claims as herein presented, but without

prejudice to the refiling of this lawsuit without seeking *in forma pauperis* status and upon payment of the full $402.00 filing fee. It is further recommended that should the Plaintiff pay the full filing fee within 15 days after the date of entry of dismissal, he be allowed to proceed in this lawsuit as though the full fee had been paid from the outset.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See* Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 19th day of August, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE